# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 4026 | **DATE** | 12/1/2004 |
| **CASE TITLE** | PAUL DEANE vs. STEVEN SKINNER, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 12/22/2004 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendants' motion to dismiss [doc. no. 6-1] is granted in part and denied in part. The motion is granted as to the state-law retaliatory discharge claim against the District in Count II, which is dismissed with prejudice. The motion is otherwise denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | DEC 02 2004 | 14 |
| ✓ | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| CG | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

PAUL DEANE, )
)
    Plaintiff, )
) Judge Ronald A. Guzmán
v. )
) 04 C 4026
STEVEN SKINNER and ROUND )
LAKE AREA PUBLIC LIBRARY )
DISTRICT, )
)
    Defendants. )

## MEMORANDUM OPINION AND ORDER

Paul Deane ("Deane") has sued Steven Skinner ("Skinner"), individually, and Round Lake Area Public Library District ("the District") for violating his First Amendment rights and unlawfully discharging him. The case is before the Court on defendants' Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss. For the reasons provided in this Memorandum Opinion and Order, the motion is granted in part and denied in part.

## The Legal Standard

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. Forseth v. Village of Sussex, 199 F.3d 363, 368 (7th Cir. 2000). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

**Factual Background**

The District operates the Round Lake Area Public Library ("the Library"). (Compl. ¶ 5.) The Library functions under rules and regulations set by the District's Board of Trustees ("the Board"). (*Id.*) Defendant Skinner is President of the Board. (*Id.* ¶ 2.)

In 1998, the District hired Deane as the Library's Head of Technical Services and Local Area Network Manager, and he satisfactorily worked in that capacity until December 2000. (*Id.* ¶ 6.) In January 2001, the District promoted Deane to Director of the Library. (*Id.* ¶ 7.) Deane's new responsibilities included making personnel and planning decisions, budgeting, overseeing Library materials and keeping the Board apprised of his activities. (*Id.* ¶¶ 7-8.) As Director of the Library, Deane reported to, and was supervised by, the Board. (*Id.* ¶ 8.)

In late 2003, the Board decided to place a referendum for a District tax increase on the March 2004, Lake County, Illinois election ballot. (*Id.* ¶ 9.) In November 2003, Skinner told Deane to mail material in favor of the referendum to each registered voter in the District. (*Id.* ¶ 10.) Toward that end, Skinner sent Deane an e-mail containing the name, address, phone number, political party affiliation and voting history of each registered voter in the District ("voter data"). (*Id.* ¶ 11.)

Deane thought it was illegal to release the voter data to anyone other than registered state political committees without the permission of the Illinois State Board of Elections. (*Id.* ¶ 14.) Because the District was not a state political committee, on January 13, 2004, Deane told Skinner in an e-mail that the District should not use the voter data unless the District took the necessary steps to legitimize its use. (*Id.* ¶¶ 15-16.)

Approximately three weeks later, Skinner persuaded the Board to hold private meetings to discuss Deane's job performance. (*Id.* ¶ 17.) On February 7, 2004, the Board, including Skinner, voted to terminate Deane's employment effective February 9, 2004. (*Id.* ¶ 18.)

## Discussion

In Count I, Deane alleges that Skinner sought his termination in retaliation for Deane's exercise of free speech. To state a First Amendment retaliation claim, Deane must allege that: (1) the implicated speech was constitutionally protected; and (2) Skinner retaliated against him because of that speech. *See Button v. Kibby-Brown*, 146 F.3d 526, 529 (7th Cir. 1998). In the public employment context, speech is constitutionally protected if it "addresse[s] a matter of public concern" and the employee's "interest in his expression . . . outweigh[s] . . . any injury the speech could cause to the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* (internal quotation marks and citation omitted).

The threshold question, whether the speech is a matter of public concern, is a matter of law for the court. *Id.* The court bases its determination on "the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48 (1983). In addition, we must take into account "the *point* of the speech in question: was it the employee's point to bring wrongdoing to light? Or was the point to further some purely private interest?" *Linhart v. Glatfelter*, 771 F.2d 1004, 1010 (7th Cir. 1985).

Though Deane's January 2003 e-mail questioned the legality of using the voter data, ostensibly a public matter, Skinner says that the form, context and purpose of Deane's speech establish that he was furthering a private interest. Deane challenged the voter data in an e-mail that was sent only to Skinner, the supervisor who had assigned him the direct mailing task, not to the media, the public at large or even the other members of the Library Board. (Compl. ¶ 16.) Moreover, he sent the e-mail on January 13, 2003, more than two months after he had received the mailing assignment and less than two months before the scheduled referendum. (*Id.* ¶¶ 9, 11, 16.) Skinner says that the timing of the e-mail establishes that its purpose was to protect Deane from the

3

consequences of his procrastination, not to air his concerns about the voter data. Thus, Skinner argues, Deane's e-mail addresses a purely private concern and is not constitutionally protected.

That Deane's e-mail was simply an attempt to avoid rebuke from his boss is one plausible interpretation of the complaint. But it is not the only one. It is equally reasonable to infer that Deane was threatening to go public with Skinner's purportedly illegal conduct if he persisted in using the data.[1] Viewed in that light, Deane's e-mail implicated the paradigm public interest: exposing the wrongdoing of a government official. *McGreal v. Ostrov*, 368 F.3d 657, 679-80 (7th Cir. 2004) (noting that speech that exposes government corruption "'has generally been accorded the greatest level of First Amendment protection.'" (quoting *Jefferson v. Ambroz*, 90 F.3d 1291, 1298 (7th Cir. 1996) (Rovner, J., concurring)). Because Deane's allegations do not conclusively establish that his e-mail addressed a purely private matter, defendants' motion to dismiss on that basis is denied. *Trejo v. Shoben*, 319 F.3d 878, 885 (7th Cir. 2003) ("[W]here the employer brings a motion to dismiss the employee's free speech claim *on the basis of the pleadings rather than on the facts in the record,* the speech may be presumed to involve a matter of public concern if it touches upon any matter for which there is potentially a public interest.") (internal quotation marks and citation omitted) (emphasis in original).

Even if the e-mail addresses a matter of public concern, defendants say that Deane's First Amendment claim must still be dismissed because his interest in that expression is outweighed by

---

[1] It is not clear that the District's use of the data would have been improper. *See* 10 ILL. COMP. STAT. 5/4-8 (stating that electronic voter data can be disclosed to "a governmental entity for a governmental purpose"). Plaintiff alleges, however, that he investigated the issue and had a good faith belief that such use would be illegal. (Compl. ¶¶ 14-15.) Because Deane's allegations support the inference that his charge of wrongdoing was not "false and recklessly made," whether the charge is actually true is irrelevant. *See McGreal v. Ostrov*, 368 F.3d 657, 673 (7th Cir. 2004).

4

the District's interest in promoting the efficiency of its public services. Among the factors we must consider to determine whether the employer's interest is paramount are:

> (1) whether the speech would create problems in maintaining discipline or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform [his] responsibilities; (4) the time, place and manner of the speech; (5) the context in which the underlying dispute arose; (6) whether the matter was one on which debate was vital to informed decisionmaking; and (7) whether the speaker should be regarded as a member of the general public.

*Greer v. Amesqua*, 212 F.3d 358, 371 (7th Cir. 2000). There may be evidence to support defendants' contention that the balance of these factors tips in their favor. At this stage, however, we are weighing allegations, not evidence, and those allegations do not establish that defendants' interests prevail.

Next, Skinner argues that the affirmative defense of qualified immunity shields him from liability. Government officials performing discretionary functions have qualified immunity from money damages if their actions do not violate "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Erwin v. Daley*, 92 F.3d 521, 525 (7th Cir. 1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "When considering a defense of qualified immunity, two questions are pertinent: first, whether the plaintiff has asserted a violation of a constitutional right at all, and second, whether the plaintiff has demonstrated that the applicable constitutional standards were clearly established at the time in question." *Id.* We have already determined that Deane has stated a First Amendment claim. Moreover, it was clearly established in 2003 that a public employee cannot be fired for exposing official misconduct, unless his speech unduly disrupts the public employer's operations. *Connick*, 461 U.S. at 147-50 (employee's interest in speech on matter of public concern must be weighed against employer's interest in efficient operations); *Spiegla v. Hull*, 371 F.3d 928, 937 (7th Cir. 2004) (citing cases from 1987 forward and

stating "our cases have consistently held that speech alleging government corruption and malfeasance is of public concern"). Thus, Skinner's motion to dismiss Count I on the grounds of qualified immunity is denied.

Skinner's last argument is that the Court should dismiss Deane's complaint because the Board, not Skinner, fired him. Because he did not personally cause Deane's termination, Skinner says, he cannot be held liable under section 1983. Though personal liability under section 1983 is predicated on fault, "[a]n official causes a constitutional violation if he sets in motion a series of events that [he] knew or reasonably should have known would cause others to deprive plaintiff of constitutional rights." *Brokaw v. Mercer County*, 235 F.3d 1000, 1012 (7th Cir. 2000). That is just what Deane claims Skinner did. (*See* Compl. ¶¶ 17-18 (alleging that Skinner induced the Board to terminate Deane).) Accordingly, Skinner's motion to dismiss Count I is denied. *See Soderbeck v. Burnett County*, 752 F.2d 285, 293 (7th Cir. 1985) (reversing directed verdict for members of committee who had not terminated plaintiff but may have been involved in the decision to do so because "[t]he important question is whether [the committee] participated" in the termination not whether it had the authority to make the termination decision).

In Count II, Deane asserts a state-law retaliatory discharge claim against the District. The District says that it is shielded from this claim by the Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act"). The Tort Immunity Act immunizes public employees, like Deane and the Board, whose positions involve "the determination of policy or the exercise of discretion," from liability for injuries resulting from those acts. 745 ILL. COMP. STAT. 10/2-201. Moreover, if a public employee is not liable on a claim, neither is the local public entity that employs him. *See* 745 ILL. COMP. STAT. 10/2-109 ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable.").

Immunity under section 2-201 will not apply, however, if the injury results from an act that is ministerial in nature. *Trotter v. School Dist. 218*, 733 N.E.2d 363, 374 (Ill. App. Ct. 2000). "Ministerial acts are those that a person performs on a given state of facts, in a prescribed manner, in obedience to the legal authority, and without reference to the official's discretion as to the propriety of the act." *Id.* Deane alleges that, at Skinner's urging, the Board fired him because it determined that his "performance as Director of the Library was either substandard or not suited to the District's needs." (Compl. ¶ 17.) Thus, Deane has alleged that his termination was an exercise of discretion. *See Zinnermon v. City of Chicago*, 209 F. Supp. 2d 908, 911 (N.D. Ill. 2000) (holding that termination of police officer was discretionary act).

Though he does not dispute the discretionary label, Deane says the Tort Immunity Act still does not apply because it has an exception for acts that are willful and wanton or based on malicious motives. Because he has alleged that Skinner "intentionally and maliciously . . . cause[d] the Board to terminate [him]," (Compl. ¶ 17), Deane says his discharge claim may stand.

In support of his argument, Deane cites *Youker v. Schoenberger*, 22 F.3d 163 (7th Cir. 1994). The *Youker* court relied on *Barth v. Board of Education of the City of Chicago*, 490 N.E.2d 77 (Ill. 1986) to hold that immunity under section 2-201 "'does not extend to (1) a public employee's acts based on corrupt or malicious motives, or (2) a public employee's willful and wanton acts.'" *Id.* at 168 (quoting *Barth*, 490 N.E.2d at 81). Subsequently, however, in *In re Loop Flood Litigation*, 680 N.E.2d 265 (Ill. 1997), the supreme court overruled *Barth*. In the words of the court:

> The plain language of section 2-201 is unambiguous. That provision does not contain an immunity exception for willful and wanton misconduct. Where the legislature has chosen to limit an immunity to cover only negligence, it has unambiguously done so. Since the legislature omitted such a limitation from the plain language of section 2-201, then the legislature must have intended to immunize liability for both negligence and willful and wanton misconduct.

7

*Id.* at 273; *see Village of Bloomingdale v. CDR Enters., Inc.*, 752 N.E.2d 1090, 1097-98 (Ill. 2001) (holding that section 2-201 does not have an exception for acts committed with corrupt or malicious motives). The Illinois Supreme Court's recent pronouncements on the issue leave no room for debate: section 2-201 of the Tort Immunity Act contains no exceptions for acts done willfully and wantonly or with corrupt or malicious motives. Accordingly, both Skinner and the District are immune from Deane's retaliatory discharge claim.

### Conclusion

For the reasons set forth above, defendants' motion to dismiss [doc. 6] is granted in part and denied in part. The motion is granted as to the state-law retaliatory discharge claim asserted against the District in Count II, which is dismissed with prejudice. The motion is otherwise denied.

SO ORDERED.                    ENTERED: 12/1/04

HON. RONALD A. GUZMAN
United States District Judge